# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JOHNNY MCCRAY, JR.,

        Plaintiff,

vs.                                      No. CIV 19-0090 JB/GBW

SOCIAL SECURITY ADMINISTRATION,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiff's Motion to Reverse and Remand for Rehearing with Supporting Memorandum, filed July 29, 2019 (Doc. 22)("Motion"); and (ii) the Plaintiff's Objections to Magistrate Judge's December 2, 2019 Proposed Findings and Recommended Disposition (Doc. # 29), filed December 16, 2019 (Doc. 30)("Objections"). Being fully advised, the Court grants in part and denies in part Plaintiff Johnny McCray, Jr.'s, Motion, and the Court overrules all of the McCray's Objections except his Objection that the ALJ who heard his case was unconstitutionally appointed.

## BACKGROUND

Plaintiff Johnny McCray, Jr., filed an application for Supplemental Security Income ("SSI") on March 5, 2015. See Complete Administrative Transcript at 17, filed May 1, 2019 (Doc. 17-1)("AR"). The Social Security Administration ("SSA") denied McCray's application on December 28, 2018. See AR at 1. On January 31, 2019, McCray filed a complaint seeking review of the Commissioner's decision. See Complaint, filed January 31, 2019 (Doc. 1). On July 29, 2019, McCray filed the Motion. On November 11, 2019, the Motion was fully briefed. See Notice of Completion of Briefing, filed November 11, 2019 (Doc. 28). On December 2, 2019, the

Honorable Gregory B. Wormuth, United States Magistrate Judge for the United States District Court for the District of New Mexico, filed his PFRD, in which he recommends denying McCray's Motion and affirming the final decision of the Administrative Law Judge ("ALJ").  See PFRD at 1.  McCray filed Objections to the PFRD on December 16, 2019, objecting to all the Magistrate Judge's recommended findings.  See Objections at 1-13.  For the reasons discussed below, the Court agrees that the ALJ committed no reversible error and adopts Magistrate Judge Wormuth's PFRD.

## STANDARD OF REVIEW

After a party objects to the Magistrate Judge's proposed findings and recommendations, the Court "shall make a de novo determination of those portions . . . to which objection is made." 28 U.S.C. § 636(b).  Objections must be made with specificity; general or conclusory objections are insufficient.  See United States v. One Parcel of Real Property, With Buildings, Appurtenances, Improvements, and Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma, 73 F.3d 1057, 1060-61 (10th Cir. 1996).  Further, "issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."  Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).

## ANALYSIS

The Court grants the Motion in part and denies it in part.  The Court rejects McCray's first seven objection, because it concludes that: (i) substantial evidence supports the ALJ's decision not to incorporate McCray's cane into his residual functional capacity determination; (ii) substantial evidence supports the ALJ's finding on McCray's handling and fingering ability; (iii) the ALJ's residual functional capacity assessment does not fail to consider the evidence of limitations on

McCray's standing and walking ability; (iv) the ALJ did not fail to develop adequately the record, because little evidence supports a finding of mental impairment; (v) the ALJ did not commit reversible error in discounting McCray's subjective report of symptoms; (vi) the ALJ did not err in assigning little weight to the report of McCray's family member, because it provides minimal information on McCray's functioning; and (vii) the Appeals Council did not err in declining to remand, because McCray's additional evidence does not have a reasonable probability of changing the outcome of the ALJ's decision. The Court sustains McCray's final objection, because it concludes that the Appeals Council erred in declining to remand for a hearing before a new ALJ, because McCray did not forfeit his appointments clause challenge and the ALJ was an Officer of the United States.

## I.     SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION NOT TO INCORPORATE MCCRAY'S CANE INTO HIS RESIDUAL FUNCTIONAL CAPACITY DETERMINATION.

McCray raises several Objections to Magistrate Judge Wormuth's proposed finding that the ALJ did not err by failing to incorporate McCray's use of a cane into the residual functional capacity ("RFC") finding. See Objections at 1-3. First, McCray asserts that Magistrate Judge Wormuth engaged in post hoc rationalization when he found that the ALJ had rejected his treating nurse's opinion and adopted Dr. Mamaril's opinion regarding the use of the cane. The ALJ, however, explicitly assigned little weight to Ms. Mader's opinion and "largely adopted" Dr. Mamaril's opinion, excepting Dr. Mamaril's finding of no manual limitations. AR at 26-27. Although the ALJ's discussion of the weight he assigned to various medical opinions is several paragraphs removed from the ALJ's reference to McCray's cane use, see AR at 24, both discussions fall under the topic of McCray's RFC, see AR at 22-28. It requires no post hoc rationalization to conclude that the ALJ intended his assessment of various medical opinions to apply to the medical evidence to which those medical opinions relate.

Next, McCray objects to "the Magistrate Judge's recommendation that this Court find that the ALJ did not err in elevating the opinion of non-examining agency doctor Mamaril (that the use of a cane is not medically supported) over that of treating NP Mader." Objections at 2 (citing PFRD at 8). Magistrate Judge Wormuth made no such recommendation. The error that McCray alleges regarding the cane's use is that substantial evidence does not support the ALJ's decision to disregard the cane. See Motion at 5-7. Magistrate Judge Wormuth disagreed with McCray, finding that there was "little objective medical evidence establishing that the cane is medically necessary." PFRD at 8. McCray never argued any error in the ALJ's decision to assign little weight to Mader's opinion and significant weight to Dr. Mamaril's opinion. See generally Motion at 1-27. Thus, Magistrate Judge Wormuth did not address any such error. The Court deems this issue waived and will not consider it. See United States v. Garfinkle, 261 F.3d 1030, 1030-31 (10th Cir. 2001)("In this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived."); Marshall v. Chater, 75 F.3d at 1426 ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived."); Moody v. Dollar Tree Store No. 2967, 402 F. Supp. 3d 1103, 1106 (D.N.M. 2019)(Browning, J.).

McCray raises other objections regarding the use of the cane, including that it "affects a worker's ability to lift, carry, reach, and handle"; that McCray's subjective reports of his symptoms support the cane's necessity; and that the cane was required to be incorporated into the ALJ's hypothetical to the vocational expert. See Objections at 2-3. All of these Objections amount to an assertion that the ALJ was required to incorporate McCray's cane use into the RFC determination. As Magistrate Judge Wormuth noted, the ALJ was required to incorporate the cane into the RFC only if he found that it was medically necessary. See Staples v. Astrue, 329 F. App'x 189, 191-92

(10th Cir. 2009)(unpublished)[1]; Social Security Ruling (SSR) 96-9p. The ALJ adopted Dr. Mamaril's opinion that the cane was not medically supported, and Magistrate Judge Wormuth concluded substantial evidence supported the ALJ's decision. Magistrate Judge Wormuth's analysis persuades the Court, and the Court hereby adopts it. McCray's arguments to the contrary seek to have the Court reweigh the evidence, which it cannot do. See Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008).

## II. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING ON MCCRAY'S HANDLING AND FINGERING ABILITY.

McCray next objects to Magistrate Judge Wormuth's conclusion that the ALJ committed no error in finding that McCray could frequently handle, finger, and feel with his right upper extremity. McCray points to evidence in the record supporting a finding that McCray was more limited. See Objections at 3-6. The Court must affirm the ALJ's decision so long as substantial evidence supports the conclusion and it complies with legal standards. See Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800-01 (10th Cir. 1991). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as

---

[1]Staples v. Astrue, 329 F. App'x 189 (10th Cir. 2009), is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished decisions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . And we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005). The Court finds that Staples v. Astrue, Watts v. Berryhill, 705 F. App'x 759 (10th Cir. 2017), and Kellams v. Berryhill, 696 F. App'x 909 (10th Cir. 2017) have persuasive value with respect to a material issue and will assist the Court in its disposition of this Memorandum Opinion and Order.

adequate to support a conclusion." <u>Casias v. Sec'y of Health & Human Servs.</u>, 933 F.2d at 800. "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" <u>Lax v. Astrue</u>, 489 F.3d 1080, 1084 (10th Cir. 2007)(quoting <u>Zoltanski v. F.A.A.</u>, 372 F.3d 1195, 1200 (10th Cir. 2004)).

In reviewing the evidence of impairment in McCray's right upper extremity, the ALJ considered the subjective evidence. He considered McCray's testimony that his carpal tunnel syndrome is his third worst problem, after his back pain and the numbness, tingling, and spasms all over the right side of his body. <u>See</u> AR at 23, 49. The ALJ also considered McCray's function report, in which McCray stated that he had difficulties lifting, reaching, and using his hands, and that he sometimes wakes up at night because of "freezing" in his hand. AR at 22, 280, 284. McCray identified "spinal damage" as the cause of all his impairments. AR at 284. The ALJ considered medical records in which McCray complains of paresthesia, pain, and weakness in his upper right limb. <u>See</u> AR at 24-25 (citing <u>id.</u> at 430-32); <u>id.</u> at 25 (citing <u>id.</u> at 510, 535, 615); <u>id.</u> at 26 (citing <u>id.</u> at 567). The ALJ also considered evidence of similar complaints regarding McCray's "right side" in general. AR at 23. These complaints appear to refer primarily to the right side of McCray's torso and/or his right leg, rather than his right upper extremity. <u>See</u>, <u>e.g.</u>, AR at 48 (McCray stating that his right-side weakness causes him to collapse while walking).

The ALJ also considered the objective medical evidence. He considered Mader's assessment of decreased strength and poor point discrimination in McCray's right hand. <u>See</u> AR at 25, 437. The ALJ discusses the results of McCray's electromyography[2] nerve conduction

---

[2]Electromyography is a "electrodiagnostic medicine technique for evaluating and recording the electrical activity produced by skeletal muscles." <u>Electromyography</u>, Wikipedia, lasted visited January 18, 2019, https://en.wikipedia.org/wiki/Electromyography.

studies, which resulted in a diagnosis of carpal tunnel syndrome on the right side. See AR at 25, 554. The ALJ also discussed the results of an x-ray showing no abnormalities or significant degenerative changes in McCray's left wrist. See AR at 25, 675. The ALJ considered the treatments that McCray was prescribed, including a splint and iontophoresis[3] patches, but not steroid injections. See AR at 25, 560, 632, 654-55. The ALJ considered physical therapy sessions in which McCray was observed to have decreased sensation, spasms, and tightness in his right upper extremity, but also normal range of motion. See AR at 25, 431-32, 560, 632-33, 635, 637, 642, 644. The ALJ also considered evidence that McCray's treatments relieved his pain and symptoms. See AR at 23, 49, 632. After considering all this evidence, the ALJ concluded that McCray has right-side carpal tunnel syndrome, but that it is not disabling, relying on the minimal degeneration found in McCray's x-ray and that treatment appears to manage it. The impairment appeared to be managed with treatment. The Court agrees with Magistrate Judge Wormuth that there is substantial evidence in the record to support the ALJ's decision.

McCray also objects to Magistrate Judge Wormuth's statement that McCray had "no sign of peripheral neuropathy." Objections at 5 (citing PFRD at 9). Upon examination of the record, this finding was made by Dr. Baljinder Sandhu, who diagnosed McCray's carpal tunnel syndrome. See AR at 554-55. Thus, it is not, as McCray contends, a "speculative inference[]" from McCray's medical reports. Objections at 5 (citing Sisco v. HHS, 10 F.3d 739, 744 (10th Cir. 1993)). The Court, therefore, overrules this objection.

_____

[3]Iontophoresis "is simply defined as ion transfer (ionto = ion; phoresis = transfer)." Iontophoresis, Electrotherapy on the Web, last visited January 20, 2020. http://www.electrotherapy.org/modality/iontophoresis. It is used in the medical field to deliver drugs or chemicals through the skin. See Iontophoresis, Wikipedia, last visited January 20, 2020, https://en.wikipedia.org/wiki/Iontophoresis.

Finally, McCray objects to Magistrate Judge Wormuth's failure to address McCray's contention that the ALJ was required to explain how McCray could frequently feel, handle, and finger with his right upper extremity. See Objections at 6. As explained more fully in response to McCray's Objections regarding his walking and standing ability, infra Section III, the ALJ is required to provide a narrative discussion of all medical and non-medical evidence, and a function-by-function assessment of McCray's impairments. As explained above, the ALJ considered the medical and non-medical evidence relevant to McCray's impairment in his right upper extremity and concluded that it was severe but not disabling. Magistrate Judge Wormuth was able to follow the ALJ's reasoning and to identify the findings on which the ALJ relied in arriving at his conclusion. See PFRD at 8-9. Thus, there was nothing missing from the ALJ's narrative statement or functional assessment.

## III. THE ALJ'S RFC ASSESSMENT CONSIDERS THE EVIDENCE OF LIMITATIONS ON MCCRAY'S STANDING AND WALKING ABILITY.

McCray objects to Magistrate Judge Wormuth's recommendation that substantial evidence supports the ALJ's finding that McCray could stand and/or walk up to six hours a day (as required for light work). McCray specifically objects that Magistrate Judge Wormuth fails to discuss relevant authority supporting reversal of the ALJ's decision. See Objections at 6-7 (citing SSR 96-8p, 61 Fed. Reg. 34474 (July 2, 1996); 20 C.F.R. § 416.945; and Hendron v. Colvin, 767 F.3d 951 (10th Cir. 2014)). The RFC assessment is "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 WL 374184, at *3. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. at 34478.

In Hendron v. Colvin, the United States Court of Appeals for the Tenth Circuit addresses arguments that the ALJ's RFC determination did not accord with legal standards. See 767 F.3d at 954. First, Hendron argued that the ALJ failed to include a narrative discussion of the medical and non-medical evidence. See 767 F.3d at 954. She pointed to a single doctor visit, arguing that the ALJ was required to discuss specifically this evidence. See 767 F.3d at 955. The Tenth Circuit found that the ALJ satisfied the requirements of a narrative discussion, because he "thoroughly reviewed the medical evidence" and discussed Hendron's report of her daily activities. 767 F.3d. at 954-56. Hendron also asserted that the ALJ failed to separately discuss and consider her difficulty with sitting. 767 F.3d at 956. The Tenth Circuit disagreed, concluding that the ALJ considered the evidence that Hendron could not sit for long periods of time and nonetheless found that she was capable of sedentary work, which involves sitting for six hours of an eight-hour workday. See 767 F.3d at 956-57. Thus, the ALJ did not err in failing to explicitly address her ability to sit, because the Tenth Circuit was able to "follow the adjudicator's reasoning [and] determine that correct legal standards have been applied." 767 F.3d at 957 (quoting Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012)).

In McCray's case, the ALJ satisfied the requirement to put the RFC determination in narrative form. The ALJ considered McCray's function report, in which McCray stated that he has numbness on his body's right side and that he can walk only a quarter mile before stopping. See AR at 22, 279-86. The ALJ considered McCray's testimony, in which he described his back pain as his worst problem and described the pain that radiates down his right hip. See AR at 23, 50-51. The ALJ also considered McCray's testimony that he experiences tingling and spasms along his right side. See AR at 23, 52. The ALJ considered McCray's physical therapy records from January, 2015, to February, 2016. See AR at 25, 370-432, 524-25, 547-49, 646, 657, 659,

663, 667.  The ALJ considered the records from McCray's appointments with a neurosurgeon and a neurologist.  See AR at 24, 504, 510.  The ALJ considered the epidural injections that McCray underwent to alleviate his pain.  See AR at 25, 567-68.  The ALJ considered McCray's complaints in several visits to urgent care.  See AR at 25, 569-77.  The ALJ considered the CT scans showing facet joint degenerative changes and osteophytic spurring.  See AR at 24, 672-73.  In short, the ALJ's citations to the record demonstrate that he thoroughly reviewed the medical and non-medical evidence, including the evidence that McCray emphasized.  See Motion at 13-17.

From the above evidence that the ALJ expressly considered, the ALJ concluded that McCray had the RFC to stand or walk for up to six hours per day, as required for light work.  The ALJ relied on the MRIs and x-rays showing only "mild degenerative changes," AR at 24, Dr. Mamaril's conclusion that McCray's "gait and motor functions are normal," AR at 178, and inconsistencies between McCray's subjective reports and the objective medical evidence, see AR at 24.  Between the ALJ's thorough consideration of the evidence and his ultimate RFC determination, the Court can follow the adjudicator's reasoning and determine that the ALJ applied correct legal standards.  See Keyes-Zachary v. Astrue, 695 F.3d at 1166.

IV.    **THE ALJ DID NOT FAIL TO DEVELOP ADEQUATELY THE RECORD, BECAUSE LITTLE EVIDENCE SUPPORTS A FINDING OF MENTAL IMPAIRMENT.**

McCray objects to Magistrate Judge Wormuth's proposed finding that the ALJ did not fail to develop the record regarding McCray's depression.  See Objections at 7.  Magistrate Judge Wormuth found that "[a]ny error that the ALJ arguably committed by failing to mention Plaintiff's counseling session was harmless because there is no evidence that Plaintiff suffered any limitations due to a mental impairment."  PFRD at 12-13.  McCray objects to this finding on the grounds that it was: (i) a post hoc rationalization; and (ii) factually incorrect.  See Objections at 7.

The Court may not adopt a post hoc rationalization for the ALJ's decision that is not apparent from the ALJ's own opinion. See Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007). The Court may apply the harmless-error doctrine, however, "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004). Magistrate Judge Wormuth concluded that the ALJ's failure to discuss fully the evidence of depression was a harmless error. Based on the meager evidence establishing a mental impairment, the Court agrees with Magistrate Judge Wormuth's conclusion.

As Magistrate Judge Wormuth noted, the only evidence of depression in the record is a single counseling session in which McCray was diagnosed with mild depression. See AR at 595-99. Magistrate Judge Wormuth noted that McCray reported that his spirits were "down due to medical problems," he was "unable to do things he likes to do," and he felt "guilty [for] not doing things for himself." PFRD at 11 (citing AR at 595). As Magistrate Judge Wormuth observed, these statements suggest that McCray's symptoms of depression stem from his physical limitations. See PFRD at 12. Elsewhere in the record, McCray relates his symptoms, e.g., his sleep problems, to his physical impairments. See, e.g., AR at 375. The Court also notes that McCray was scheduled for a follow-up appointment with a traditional counselor and told to contact medical providers if his symptoms became "unmanageable." AR at 597-98. He received no other referrals, and there is no record relating to the follow-up appointment. The Court is confident that no reasonable factfinder would have found a mental impairment on the basis of this scant evidence. Finally, the Court notes that the ALJ at least considered the evidence, finding that the "guidance counseling he underwent was related to isolated or episodic situations and circumstances." AR at

27.    The Court, therefore, adopts Magistrate Judge Wormuth's recommendation that the ALJ committed no more than harmless error in not devoting further attention to McCray's mild depression.

## V.    THE ALJ DID NOT COMMIT REVERSIBLE ERROR IN DISCOUNTING MCCRAY'S SUBJECTIVE REPORT OF SYMPTOMS.

McCray raises several objections to Magistrate Judge Wormuth's recommendation that the ALJ did not err in making an adverse credibility determination.  McCray's first objection is that SSR 16-3p does not allow credibility assessments.  See Objections at 7-8.  With SSR 16-3p, the SSA seeks to "clarify that subjective symptom evaluation is not an examination of an individual's character."  81 Fed. Reg. 14,166, 14,167 (March 16, 2016).  The SSA therefore removed the word "credibility" from its subregulatory policy.  See 81 Fed. Reg. 14,166.  The SSA does not, however, prevent ALJs from considering "whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record."  81 Fed. Reg. at 14,168.  See also 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence . . . .").  In fact, although SSR 16-3p rescinded the earlier SSR 96-7p, which addressed credibility determinations, the factors that the ALJ must consider in evaluating a claimant's subjective symptoms remain the same.  See Watts v. Berryhill, 705 F. App'x 759, 763 n.4 (10th Cir. 2017)(unpublished).  Thus, while the SSA no longer uses the term "credibility," inconsistencies in the claimant's statements remain a proper basis for the ALJ to discount subjective reports of symptoms.  The inconsistency at issue in this case concerns the reason for McCray's lack of employment.  McCray reported that he quit his last job because he was being cheated on his hours.  See AR at 24, 291.  This information casts doubt on whether McCray's impairments prevent him from working.  Because the reason for McCray's

inability to work is relevant to the ultimate question whether he is disabled, this inconsistency is a proper consideration under § 416.929 rather than "an examination of [McCray's] character." The Court, therefore, rejects this Objection.

McCray also objects to Magistrate Judge Wormuth's failure to address his assertion that the Commissioner waived his right to contest McCray's point of error in the ALJ's symptom evaluation. See Objections at 8. The Commissioner places himself at a disadvantage any time he or she fails to address a claimant's claim of error. The lack of a counterargument does not restrain the Court, however, from applying the law to reject a claim of error. Thus, there is nothing in the Commissioner's waiver that required Magistrate Judge Wormuth's attention.

McCray next characterizes Magistrate Judge Wormuth's discussion of this point of error as "his own analysis of Mr. McCray's symptoms." Objections at 8. Magistrate Judge Wormuth's discussion centers on what the ALJ expressly considered in evaluating McCray's symptoms, and he supports his argument with citations to the ALJ's decision. See PFRD at 14–16. As Magistrate Judge Wormuth explained, "[c]redibility determinations are within the province of the ALJ and entitled to deference." PFRD at 13 (citing Williams v. Bowen, 844 F.2d 748, 755 (10th Cir. 1988), and Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993)). Magistrate Judge Wormuth did not make his own credibility findings; he merely found no error in the ALJ's symptom evaluation.

McCray cursorily objects to Magistrate Judge Wormuth's recommendation that the ALJ did not err by considering McCray's lack of surgery as a reason to discount his allegations of pain. See Objections at 9. That McCray's impairments were not severe enough to require surgery is a legitimate consideration for the ALJ. See Keyes-Zachary v. Astrue, 695 F.3d at 1169.

Finally, McCray objects to Magistrate Judge Wormuth's recommendation that the ALJ did not err by finding that McCray's persistent attempts to find relief were disproportionate to the objective medical evidence.  See Objections at 9.  Persistent attempts to obtain relief generally provide support for a claimant's subjective report of symptoms.  See Kellams v. Berryhill, 696 F. App'x 909, 915 (10th Cir. 2017)(unpublished); Hardman v. Barnhart, 362 F.3d 676, 680 (10th Cir. 2004).  In Hardman v. Barnhart, the ALJ made conclusory statements about a lack of medication or treatment to discount the claimant's credibility.  See 362 F.3d at 680.  These statements were contrary to the medical record, which shows that the claimant took several medications and sought various forms of relief.  See 362 F.3d at 680.  The ALJ also relied on a single medical opinion which asserted that the claimant was engaging in "disability seeking behavior" and on an unremarkable electromyography nerve conduction study, but the ALJ barely mentioned any of the medical records establishing the claimant suffered severe lumbar pain.  362 F.3d at 680-81.  The Tenth Circuit concluded that "virtually all of the reasons given by the ALJ for rejecting claimant's testimony are not supported by substantial evidence."  362 F.3d. at 681.  Similarly, in Kellams v. Berryhill, the Tenth Circuit found that the ALJ downplayed the claimant's treatment and prescription history, and improperly focused on treatment options that the claimant did not consider.  See 696 F. App'x at 915-16.

Hardman v. Barnhart and Kellams v. Berryhill establish that the ALJ must consider evidence of repeated attempts to find relief, but they do not establish that such evidence necessitates a finding that the claimant's subjective symptoms are credible.  In McCray's case, the ALJ acknowledges McCray's extensive treatments and prescriptions.  The ALJ found that these persistent efforts were not consistent with the objective medical evidence, however, which show very little degenerative change.  While it is not proper under SSR 16-3p to rely solely on objective

medical evidence to reject a claim of disability, see 81 Fed. Reg. at 14,168, this factor was only

one of several factors on which the ALJ relied.  For the reasons discussed above and in Magistrate

Judge Wormuth's PFRD, the Court concludes that the ALJ properly considered the relevant factors

when assessing McCray's subjective complaints of pain and supported his adverse determination

with substantial evidence.

## VI. THE ALJ DID NOT ERR IN ASSIGNING LITTLE WEIGHT TO THE REPORT OF MCCRAY'S FAMILY MEMBER, BECAUSE IT PROVIDES MINIMAL INFORMATION ON MCCRAY'S FUNCTIONING.

McCray objects to Magistrate Judge Wormuth's proposed finding that the ALJ did not err

in rejecting the lay evidence that McCray's cousin, Priscilla Chiquito provides.  See Objections at

9-10.  McCray specifically objects if the PFRD's recommendation "is that this Court find that the

fact that Ms. Chiquito is not a medical or vocational expert is one factor the ALJ properly

considered."  Objections at 10.  He argues that there is "no citation to authority for such a

proposition, and indeed the law is to the contrary."  Objections at 10 (citing 20 C.F.R.

§§ 416.913(a)(4), 416.927(f)(1)).  20 C.F.R. § 416.913(a)(4) states that "[e]vidence from

nonmedical sources" is a category of evidence the SSA may consider in its adjudications.  20

C.F.R. § 416.927(f)(1) provides the standard by which nonmedical sources are judged:

> Opinions from medical sources who are not acceptable medical sources and from
> nonmedical sources may reflect the source's judgment about some of the same
> issues addressed in medical opinions from acceptable medical sources.  Although
> we will consider these opinions using the same factors as listed in paragraph (c)(1)
> through (c)(6) in this section, not every factor for weighing opinion evidence will
> apply in every case because the evaluation of an opinion from a medical source
> who is not an acceptable medical source or from a nonmedical source depends on
> the particular facts in each case.  Depending on the particular facts in a case, and
> after applying the factors for weighing opinion evidence, an opinion from a medical
> source who is not an acceptable medical source or from a nonmedical source may
> outweigh the medical opinion of an acceptable medical source, including the
> medical opinion of a treating source.  For example, it may be appropriate to give
> more weight to the opinion of a medical source who is not an acceptable medical
> source if he or she has seen the individual more often than the treating source, has

provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole.

20 C.F.R. § 416.927(f)(1).  These regulations require ALJs to consider the opinions of non-medical sources.  See 20 C.F.R. §§ 416.913(a)(4), 416.927(f)(1).  Other regulations discuss how a court reviews the evidence from medical sources.  See 20 C.F.R. § 416.927(c).  20 C.F.R. § 416.927(f) specifically distinguishes non-medical sources and unacceptable medical sources.  See 20 C.F.R. § 416.927(f).  In light of this regulatory scheme, the Court concludes that the ALJ reasonably discounted Chiquito's report for its lack of insight into McCray's day-to-day activities and for its inconsistency with the overall medical record.  See AR at 28.  As Magistrate Judge Wormuth noted, Chiquito was unable to respond to multiple questions about McCray's day-to-day activities.  See PFRD at 16-17.  The ALJ properly considered Chiquito's report, which was all that was required of him.  See Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996).

The Court further notes that Chiquito's report is not entirely inconsistent with the ALJ's decision to limit McCray to light work.  See AR at 22; 20 C.F.R. § 416.967; SSR 83-10, 45 Fed. Reg. 55566.  For example, Chiquito reported that McCray was unable to do any heavy lifting or outdoor work but that he was able to do indoor cleaning, such as washing dishes and laundry.  See AR at 308-09.  Thus, it is not reasonable to conclude that the ALJ's decision would have been any different if he had assigned greater weight to Chiquito's report.

## VII.  THE APPEALS COUNCIL DID NOT ERR IN DECLINING TO REMAND, BECAUSE MCCRAY'S ADDITIONAL EVIDENCE DOES NOT HAVE A REASONABLE PROBABILITY OF CHANGING THE OUTCOME OF THE ALJ'S DECISION.

McCray objects to Magistrate Judge Wormuth's proposed finding that the Appeals Council did not err in concluding that ninety-nine pages of additional evidence would not have changed the outcome of the ALJ's decision.  See Objections at 10-11.  McCray argues that Magistrate Judge Wormuth "pointed to 12 out of 99 pages that were cumulative, but that leaves 87 pages that were

new." Objections at 11 (citing PFRD at 18). The Appeals Council must grant administrative review if it receives additional evidence that (i) is new; (ii) is material; (iii) relates to the period on or before the date of the hearing decision; and (iv) has a reasonable probability of changing the outcome of the decision. See 20 C.F.R. § 416.1470(a)(5); Chambers v. Barnhart, 389 F.3d 1139, 1142, 1144 (10th Cir. 2004).

The first ten pages of evidence submitted to the Appeals Council consist of a summary of McCray's medical history, including radiology studies from the previous five years, laboratory tests from the previous two years, routine examinations going back to 1998, and all prior immunizations. See AR at 61-70. Other pages in the record explain with significantly greater detail the little relevant evidence that may be gleaned from these pages. The next ten pages consist of results of an extensive panel of laboratory tests. See AR at 71-80. These pages contain no analysis from which to derive any meaningful conclusions about McCray's functioning. Thirty-eight out of ninety-nine pages relate to a fracture that McCray sustained by slipping on ice on March 12, 2018. See AR at 81-82, 85-117, 148-50. McCray does not object to Magistrate Judge Wormuth's conclusion that this evidence did not show a likelihood of changing the outcome of the ALJ's decision. See PFRD at 18. Six pages of evidence relate to McCray's failure to attend scheduled appointments. See AR at 83-84, 120-22, 141. McCray does not object to Magistrate Judge Wormuth's conclusion that this evidence supports, rather than undermines, the ALJ's decision. See PFRD at 18-19. Seven pages of evidence relate to radiology studies that were performed in July, 2017, which were already a part of the record that the ALJ considered. See AR at 151-57; PFRD at 18. Finally, the last two pages of evidence consist of a summary of McCray's prescription history. See AR at 158-59. McCray's prescriptions during his alleged period of disability were already a part of the record that the ALJ considered. See, e.g., AR at 408-09. To

summarize, seventy-three out of ninety-nine pages of additional evidence were not new and/or did not have a reasonable probability of changing the outcome of the ALJ's decision. The rest leaves twenty-six pages of evidence to consider in closer detail. See AR at 118-19, 123-140, 142-47.

On July 19, 2017, McCray went to urgent care complaining of shoulder, chest, and back pain and an inability to sleep. See AR at 142-47. The record is only partially completed and contains little to no detail regarding any treatment McCray received. See AR at 142-47. McCray's subjective complaints are similar to those reflected in records that the ALJ considered. See, e.g., AR at 375.

On November 6, 2017, McCray went to urgent care seeking refills of his prescriptions. See AR at 134-40. McCray reported that his chronic back, neck, shoulder, and wrist pain "have not changed in nature since his previous visits." AR at 134. The examining doctor discussed with McCray the need to have his pain managed through a pain management clinic and warned McCray not to take Flexeril[4] "chronically as he has been taking it." AR at 136.

On December 12, 2017, McCray attended a physical therapy session in which he complained primarily of lower back pain. See AR at 129-33. McCray was found to have pain and reduced range of motion in the lumbar region. See AR at 131. This record is similar to physical therapy records that the ALJ considered. See, e.g., AR at 431. Plaintiff attended two other physical therapy sessions in December, in which he was found to have lower back pain and tingling in his right hand and feet. See AR at 125-28. McCray did not respond well to treatment. See AR at 125, 127. McCray's complaints and negative responses to treatment are similar to those in records that the ALJ reviewed. See, e.g., AR at 417, 425, 533. On January 12, 2018, McCray attended

---

[4]Flexeril, which goes by the generic name cyclobenzaprine, helps to relax muscles. See Flexeril Tablet, WebMD (last visited January 20, 2020), https://www.webmd.com/drugs/2/drug-11372/flexeril-oral/details.

another physical therapy session in which he complained of upper back and neck pain arising from "walk[ing] most of the afternoon until dark." AR at 123-24. McCray underwent traction and reported feeling better. See AR at 123-24.

McCray did not attend another physical therapy session until over a month later, on February 23, 2018. See AR at 118-19. McCray was found to have mild to moderate pain in his upper back and right shoulder, and underwent various treatments. See AR at 118-19. This therapy is similar to treatments that McCray received in records that the ALJ considered. See, e.g., AR at 524.

These new records establish that McCray suffered roughly the same degree of impairment and received similar treatments as in the records that the ALJ reviewed. No new diagnoses were made regarding McCray's conditions. In summary, these records are not meaningfully different from the records that the ALJ considered. The Court, therefore, agrees with Magistrate Judge Wormuth that the evidence submitted to the Appeals Council did not have a reasonable probability of changing the outcome of the ALJ's decision.

## VIII. THE APPEALS COUNCIL ERRED IN DECLINING TO REMAND FOR A HEARING BEFORE A NEW ALJ, BECAUSE MCCRAY DID NOT FORFEIT HIS APPOINTMENTS CLAUSE CHALLENGE AND THE ALJ WAS AN OFFICER OF THE UNITED STATES.

Last, McCray objects to Magistrate Judge Wormuth's recommendation that the Court decline to consider McCray's challenge to the ALJ's authority to hear his case under the Appointments Clause of the Constitution of the United States of America and Lucia v. SEC, 138 S. Ct. 2044 (2018). McCray's hearing was held before an SSA ALJ on August 11, 2017. See Motion at 27. On June 21, 2018, the Supreme Court of the United States of America issued Lucia v. SEC, which held that ALJs in the Securities and Exchange Commission are "Officers of the United States," and therefore must be appointed in accord with the Appointments Clause. 138 S.

Ct. at 2055. To correct any similar constitutional issue, on July 16, 2018, the Acting Commissioner of the SSA appointed all of the agency's ALJs. See SSR 19-1, 84 Fed. Reg. 9582, 9583 (March 15, 2019).

McCray argues that his unrepresented status at the ALJ's hearing necessitates remand under Lucia v. SEC, "as there is no reason that he would have known about an Appointments Clause challenge before the *Lucia* decision was issued." Objections at 12 (citing SSR 19-1p, 84 Fed. Reg. 9582). He also cites two cases that have awarded rehearings under Lucia v. SEC even when the plaintiff did not raise the issue before the Social Security Appeals Council. See Objections at 12 (citing Hernandez v. Saul, No. SA-18-CA-955-OLG (HJB)(W.D. Tex. Nov. 22, 2019)(Garcia, C.J.);Brunson v. Saul, No. CIV 18-5562, 2019 WL 3413520 (E.D. Pa. July 26, 2019)(Strawbridge, M.J.)).

Magistrate Judge Wormuth recommends concluding that McCray forfeited the issue by not raising it during the administrative proceedings. See PFRD at 20 (quoting Lucia v. SEC, 138 S. Ct. at 2055 ("'[O]ne who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief.")) He distinguishes Sims v. Apfel, 530 U.S. 103 (2000), which McCray cites in support of his argument, and cites dozens of opinions that denied the plaintiff a rehearing on the same Lucia v. SEC-inspired issue. See PFRD at 21-22. Magistrate Judge Wormuth notes that the "requirement of timeliness is consistent with other cases resolving Appointments Clause challenges." PFRD at 23 (citing Freytag v. Comm'r of Internal Revenue, 501 U.S. at 879; id. at 893-94 (Scalia, J., concurring in part); Ryder v. United States, 515 U.S. 177, 182 (1995)). He also states that the Supreme Court's "de facto officer doctrine" influenced his recommendation. PFRD at 24. This doctrine, Magistrate Judge Wormuth asserts, "'confers validity upon acts performed by a person acting under the color of official title even

though it is later discovered that the legality of that person's appointment is . . . deficient,'" to avoid "'the chaos that would result from multiple and repetitious suits challenging every action taken by every official whose claim to office could be open to question.'"  PFRD at 24 (quoting Ryder v. United States, 515 U.S. at 180).  Magistrate Judge Wormuth concludes by stating that, because McCray "has not articulated any basis for finding Plaintiff's case to be the 'rare' kind requiring judicial deliberation," he does not recommend departing from the "virtual consensus" of district courts and concluding that McCray did not need to raise his Appointment Clause challenge during his SSA proceedings.  PFRD at 25 (quoting Freytag v. Comm'r, 501 U.S. at 879).

While Magistrate Judge Wormuth states that the "de facto officer doctrine" is "[r]elevant" to his recommendation that the Court deny McCray's objection, PFRD at 24, the Court concludes that this doctrine does not apply to this case's facts.  In Ryder v. United States, the Supreme Court overturned the Court of Military Review's holding that improperly appointed judges were protected by the de facto officer doctrine, because Ryder's claim was "based on the Appointments Clause of Article II of the Constitution -- a claim that there *has* been a 'trespass upon the executive power of appointment.'"  Ryder v. United States, 515 U.S. at 182 (emphasis in original)(quoting McDowell v. United States, 159 U.S. 596, 598 (1895)).  Since this decision, the "de facto officer doctrine" has provided a shield only for the actions of officers whose appointments violate a statute or technical regulation -- not the Constitution.  See Kevin Sholette, The America Czars, 20 Cornell J. of L. & Pub. Pol'y 219, 240 n.172 (2010)("[I]n Appointments Clause challenges, the Supreme Court has chosen formalism over functionalism by rejecting the 'de facto officer doctrine.'"); Gary Lawson & Guy Seidman, The Hobbesian Constitution: Governing Without Authority, 95 Nw. Univ. L. Rev. 581, 595 (2001)("The effect, and purpose, [of the de facto officer doctrine] is to prevent technical defects in an officer's title, such as a clerical error or a failure to post a required

bond, from having potentially disastrous effects on settled legal rights."). Although Magistrate Judge Wormuth cites <u>Buckley v. Valeo</u>, 424 U.S. 1, 142 (1976), to support the "de facto officer doctrine's" application to this case, <u>Ryder v. United States</u> expressly limited that case's "de facto officer doctrine" holding to its facts. 515 U.S. at 184.

## A. RELEVANT LAW REGARDING TIMELINESS OF APPOINTMENTS CLAUSE CHALLENGES AND ISSUE EXHAUSTION IN AGENCY ADJUDICATIONS.

The Supreme Court has emphasized timeliness as a central requirement for Appointments Clause challenges. See <u>Lucia v. SEC</u>, 138 S. Ct. at 2055; <u>Ryder v. United States</u>, 515 U.S. at 182-83. A court may, in its discretion, hear an untimely Appointments Clause challenge, but the Supreme Court has not provided clear guidance concerning when this use of discretion is appropriate. In <u>Freytag v. Commissioner</u>, the Supreme Court reviewed an Appointments Clause challenge even though the petitioners did not "raise a timely objection" to the issue. <u>Freytag v. Comm'r</u>, 501 U.S. at 878. The Supreme Court noted it had previously reviewed nonjurisdictional claims not raised in the lower courts, and that <u>Glidden Co. v. Zdanok</u>, 370 U.S. 530, 536 (1962), expressly permits the Supreme Court to consider Appointments Clause challenges under these circumstances. See <u>Freytag v. Comm'r</u>, 501 U.S. at 878-79. The Supreme Court stated that

> the disruption to sound appellate process entailed by entertaining objections not raised below does not always overcome what Justice Harlan called "the strong interest of the federal judiciary in maintaining the constitutional plan of separation of powers." [<u>Glidden v. Zdanok</u>, 370 U.S. at 536.] We conclude that this is one of those rare cases in which we should exercise our discretion to hear petitioners' challenge to the constitutional authority of the Special Trial Judge.

<u>Freytag v. Comm'r</u>, 501 U.S. at 879. Associate Justice Antonin Scalia concurred in part and concurred in the judgment but wrote separately to object to the Supreme Court's failure to answer the question briefed for certiorari: "Does a party's consent to have its case heard by a special tax judge constitute a waiver of any right to challenge the appointment of that judge on the basis of

the Appointments Clause?" <u>Freytag v. Comm'r</u>, 501 U.S. at 893. Justice Scalia expressed concern that, "when there occurs a similar forfeiture of an Appointments Clause objection -- or of some other allegedly structural constitutional deficiency -- the courts of appeals will remain without guidance as to whether the forfeiture must, or even may, be disregarded," <u>Freytag v. Comm'r</u>, 501 U.S. at 893, and stated his own opinion on how Courts of Appeals should address similar issues in the future:

> In my view the answer is that Appointments Clause claims, and other structural constitutional claims, have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial. Although I have no quarrel with the proposition that appellate courts may, in truly exceptional circumstances, exercise discretion to hear forfeited claims, I see no basis for the assertion that the structural nature of a constitutional claim in and of itself constitutes such a circumstance; nor do I see any other exceptional circumstance in the present case.

<u>Freytag v. Comm'r</u>, 501 U.S. at 893-94.

The Supreme Court has not since "clarified the types of 'rare cases' that are excused from the failure to raise a claim before an agency." <u>Muhammad v. Berryhill</u>, 381 F. Supp. 3d 462, 469 (E.D. Pa. 2019)(Pappert, J.)(quoting <u>Freytag v. Comm'r</u>, 501 U.S. at 879). Four years later, however, the Supreme Court emphasized that it still considered important the timeliness of an Appointments Clause objection. In <u>Ryder v. United States</u>, the Supreme Court stated that a "timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred. Any other rule would create a disincentive to raise Appointments Clause challenges." <u>Ryder v. United States</u>, 515 U.S. at 182-183.

Aside from these cases addressing the timeliness of Appointments Clause challenges, one other case is relevant to determining timeliness in this specific context. <u>Sims v. Apfel</u>, 530 U.S. 103, examined whether a Social Security claimant must request that the Social Security Appeals

Council review certain claims to obtain later judicial review of those claims in federal court.  See Sims v. Apfel, 530 U.S. at 107.[5]   The Supreme Court held that social security claimants did not waive review of issues that they failed to raise before the Social Security Appeals Council.  See Sims v. Apfel, 530 U.S. at 105.  The Supreme Court noted in this decision that its precedent suggests that administrative issue exhaustion requirements "are largely creatures of statute" or regulation.  Sims v. Apfel, 530 U.S. at 107.  See id. at 108.  While the Supreme Court had previously imposed an issue-exhaustion requirement, it noted that its reasons for doing so do not apply in this context.  See Sims v. Apfel, 530 U.S. at 108-109.

The Supreme Court then discussed when it is appropriate for courts to impose an issue exhaustion requirement.  See Sims v. Apfel, 530 U.S. at 108-110.  It observed, preliminarily, that "[t]he basis for a judicially imposed issue-exhaustion requirement is an analogy to the rule that appellate courts will not consider arguments not raised before trial courts," Sims v. Apfel, 530 U.S. at 108-09, and excerpted extensively from Hormel v. Helvering, 312 U.S. 552 (1941):

> "Ordinarily an appellate court does not give consideration to issues not raised below. For our procedural scheme contemplates that parties shall come to issue in the trial forum vested with authority to determine questions of fact.  This is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial tribunal is alone competent to decide; it is equally essential in order that litigants may not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence.  And the basic reasons which support this general principle applicable to trial courts make it equally desirable that parties should have an opportunity to offer evidence on the general issues involved in the less formal proceedings before administrative agencies entrusted with the responsibility of fact finding."

---

[5] The Supreme Court noted that the issue which McCray presents in this case, "[w]hether a claimant must exhaust issues before the ALJ," was not before the Supreme Court.  Sims v. Apfel, 530 U.S. at 107.

Sims v. Apfel, 530 U.S. at 109 (quoting Hormel v. Helvering, 312 U.S. at 556). The Supreme Court stated that it had required administrative issue exhaustion "'as a general rule' because it is usually 'appropriate under [an agency's] practice' for 'contestants in an adversary proceeding' before it to develop fully all issues there." Sims v. Apfel, 530 U.S. at 109 (quoting United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 36-37 (1952)). The agency proceeding's adversarial nature is very important to this question; where the proceeding is adversarial, "the rationale for requiring issue exhaustion is at its greatest." Sims v. Apfel, 530 U.S. at 110. When the proceeding is not adversarial, "the reasons for a court to require issue exhaustion are much weaker." Sims v. Apfel, 530 U.S. at 110. The Supreme Court's majority opinion concluded by reiterating a warning "against reflexively 'assimilating the relation of . . . administrative bodies and the courts to the relationship between lower and upper courts.'" Sims v. Apfel, 530 U.S. at 110 (quoting F.C.C. v. Pottsvile Broad. Co., 309 U.S. 134, 144 (1940)).

Associate Justice Sandra Day O'Connor concurred in part with the Sims v. Apfel majority decision. She wrote separately to state that, in her opinion, "the agency's failure to notify claimants of an issue exhaustion requirement in this context is a sufficient basis for our decision," and she thought "issue exhaustion is particularly inappropriate here, where the regulation and procedures of the Social Security Administration (SSA) affirmatively suggest that specific issues need not be raised before the Appeals Council." Sims v. Apfel, 530 U.S. at 113.

Associate Justice Stephen Breyer dissented, and Chief Justice William Rehnquist, and Justice Scalia and Associate Justice Anthony Kennedy joined the dissent. See Sims v. Apfel, 530 U.S. at 114. The dissenting opinion notes that issue exhaustion "applies with particular force where resolution of the claim significantly depends upon specialized agency knowledge or practice," Sims v. Apfel, 530 U.S. at 115, and that the relevant differences here between a court

and an administrative agency suggest that applying the waiver principle is more appropriate, <u>see</u> <u>Sims v. Apfel</u>, 530 U.S. at 116.  Justice Breyer stated that the Supreme Court traditionally applied the waiver principle "to avoid premature interruption of the administrative process" and allow the expert agency to develop "the necessary facts."  <u>Sims v. Apfel</u>, 530 U.S. at 116.  He stated that issue exhaustion is required where a

> "complaining party may be successful in vindicating his rights in the administrative process.  If he is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors.  Finally, it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures."

<u>Sims v. Apfel</u>, 530 U.S. at 116 (quoting <u>McKart v. United States</u>, 395 U.S. 185, 193-94 (1969)).  Finally, Justice Breyer argued that the only reason a proceeding's informality matters is if it misleads a claimant.  <u>See</u> <u>Sims v. Apfel</u>, 530 U.S. at 118.  While administrative lawyers may be aware of the "exhaustion of remedies" doctrine, Justice Breyer expressed concern that unrepresented parties would not be.  530 U.S. at 118.  Justice Breyer concluded, however, that this concern was not present here, because "the Social Security Administration says that it does not apply its waiver rule where the claimant is not represented."  530 U.S. at 118.

The Tenth Circuit has not clarified whether <u>Sims v. Apfel</u> extends beyond Appeals Council proceedings to proceedings before SSA ALJs.  <u>See</u> <u>Rabon v. Astrue</u>, 464 F. App'x 732, 734 n.3 (10th Cir. 2012)("We need not resolve the ALJ-level waiver here, because Plaintiff's belated claim of mental impairment fails on the evidence in any event.").  <u>See also</u> <u>Kepple v. Massanari</u>, 268 F.3d 513, 517 (7th Cir. 2001)("Whether such a terrible result would occur if *Sims* were applicable to administrative hearings in the SSA is a question this circuit or the Supreme Court may later address when directly confronted with the issue.").  The United States Court of Appeals for the First Circuit has expressly ruled that it will not extend <u>Sims v. Apfel</u> to ALJs, because granting

review of issues an ALJ could "easily have considered" at a hearing would "severely undermin[e] the administrative process."  See Mills v. Apfel, 244 F.3d 1, 8 (1st Cir. 2001).  The United States Court of Appeals for the Ninth Circuit, similarly, has not overruled prior precedent that "'at least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal.'"  Shaibi v. Berryhill, 883 F.3d 1102, 1109 (9th Cir. 2017)(quoting Meanel v. Apfel, 172 F.3d 1111 (9th Cir. 1999)).  See Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003)(concluding, without discussing Sims v. Apfel, that an issue not raised before an ALJ is waived from being raised on appeal).

In a just issued opinion, the United States Court of Appeals for the Third Circuit holds that SSA claimants "may raise Appointments Clause challenges in federal court without having exhausted those claims before the agency." Cirko on behalf of Cirko v. Comm'r of Soc. Sec, __ F.3d __, 2020 WL 370832, at *2 (3d Cir. Jan. 23, 2020)(Krause, J., joined by Ambro and Bibas, JJ.).  The Third Circuit states that "an exhaustion requirement for Appointments Clause claims would impose an unprecedented burden on SSA claimants," because, in the inquisitorial system, "the ALJ takes 'an active investigatory role' and 'shoulders a statutory obligation to obtain evidence,' 'to order medical testing,' and 'to request witnesses.'"  2020 WL 370832, at *4 (citing Jon C. Dubin, Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings, 97 Colum. L. Rev. 1289, 1303 (1997)).  In addition, the Third Circuit notes that, because claimants were not required to develop facts or make legal arguments, "[r]equiring exhaustion in this case would upend this arrangement by forcing claimants -- despite the informal, non-adversarial nature of the review process -- to root out a constitutional claim even beyond the power of the agency to remedy, or alternatively risk forfeiture." 2020 WL

370832, at *4.  Further, the Third Circuit states that an exhaustion requirement would particularly harm pro se claimants:

> These *pro se* claimants already face "a disadvantage in the unfamiliar world of law because they lack the specialized training of attorneys" and struggle to recognize technical legal claims like the Appointments Clause claims here.[] *Pilgrim v. Littlefield*, 92 F.3d 413, 418 (6th Cir. 1996).  Requiring exhaustion would make the consequences of that disadvantage irreparable by precluding these claimants from vindicating their rights under the Appointments Clause in federal court proceedings.  And we have little reason to think those rights will elsewhere be vindicated: While ALJs must probe for meritorious arguments more carefully where claimants are unrepresented, *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003), even the most diligent ALJ is unlikely to raise a *sua sponte* objection to his own appointment.

Cirko on behalf of Cirko v. Comm'r of Soc. Sec, 2020 WL 370832, at *4.

Since the Supreme Court issued Lucia v. SEC, dozens of district and magistrate judges have faced the same issue -- or a highly similar issue -- as the one McCray argues to the Court.  See PFRD at 21-22 nn. 4-6 (citing cases).  See also Diane S. P. v. Berryhill, 379 F. Supp. 3d 498, 505-06 (E.D. Va. 2019)(Davis, C.J.); Culclasure v. Comm'r of Soc. Sec. Admin., 375 F. Supp. 3d 559, 563-70 (E.D. Pa. 2019)(Kearney, J.); Bizarre v. Berryhill, 364 F. Supp. 3d 418, 419-25 (M.D. Pa. 2019)(Conner, C.J.);  Bradshaw v. Berryhill, 372 F. Supp. 3d 349, 352-62 (E.D.N.C. 2019)(Numbers, J.); Sprouse v. Berryhill, 363 F. Supp. 3d 543 (D.N.J. 2019)(Hart, M.J.); Hutchins v. Berryhill, 376 F. Supp. 3d 775 (E.D. Mich. 2019)(Cleland, J.); Bonilla-Bukhari v. Berryhill, 357 F. Supp. 3d 341 (S.D.N.Y. 2019)(Gorenstein, M.J.).  While the majority of courts hold that Lucia v. SEC and Sims v. Apfel do not require remand to the agency, see PFRD at 29 n.4 & n.6 (collecting cases), several decide the issue differently, see PFRD at 29 n.5; Dove-Ridgeway v. Berryhill, No. CV 19-35-LPS-MPT, 2020 WL 109034, at *7 (D. Del. Jan. 9, 2020)(Thynge, M.J.).

Confronted with no binding law on the matter, the Court concludes that McCray has not waived his Appointments Clause argument by failing to raise it before the ALJ or the Social Security Appeals Council.  "SSA regulations do not require issue exhaustion," Sims v. Apfel, 530

U.S. at 108, and the reasons that the Supreme Court has provided for failing to apply this doctrine suggest it is not appropriate on these facts. While issue exhaustion continues to be "appropriate" "as a general rule," <u>United States v. L.A. Tucker Truck Lines</u>, 344 U.S. at 36, this case is not a typical one. McCray's Appointments Clause objection is not challenging either the ALJ's factual determination or the ALJ's methods. <u>Cf.</u> <u>Sims v. Apfel</u>, 530 U.S. at 115 (Breyer, J., dissenting)(arguing that Sims' claim "clearly fall[s]" within the general rule, because it asks the reviewing court to consider whether the ALJ should have ordered further medical exams or asked different questions of an expert). The SSA has no need to "introduce" or "offer evidence" on this issue before the fact finder; McCray did not forgo his opportunity to "offer all the evidence [he] believe[s] relevant to the issues which the trial tribunal is alone competent to decide," <u>Hormel v. Helvering</u>, 312 U.S. at 556, because this issue is a purely legal one. The argument does not, therefore, "significantly depend[] upon specialized agency knowledge or practice." <u>Sims v. Apfel</u>, 530 U.S. at 115 (Breyer, J., dissenting)(noting that, in these circumstances, issue exhaustion "applies with particular force").

Additionally, SSA adjudications are non-adversarial, where "the reasons for a court to require issue exhaustion are much weaker." <u>Sims v. Apfel</u>, 530 U.S. at 110. SSA practice does not appear to require issue exhaustion either; Justice Breyer notes in dissent in <u>Sims v. Apfel</u> that "the Social Security Administration says that it does not apply its waiver rule where the claimant is not represented." 530 U.S. at 118. Thus, he was comfortable concluding that it is not arbitrary or capricious to "apply a waiver rule when a claimant was represented before the Appeals Council, as was petition, by an *attorney*." 530 U.S. at 118-119 (Breyer, J., dissenting)(emphasis in original). The distinction between represented and unrepresented parties heavily implies that the dissenters would reach a different conclusion if Sims, like McCray, was unrepresented.

The reasons other district courts have given for reaching a different outcome are unpersuasive.  In Marchant on behalf of A.A.H. v. Berryhill, No. CV 18-0345, 2019 WL 2268982, (E.D. Pa. May 28, 2019)(Kelly, J.), the Honorable Robert F. Kelly, Sr., senior United States District Judge for the Eastern District of Pennsylvania, declined to review an unraised claim under Lucia v. SEC for three reasons.  See 2019 WL 2268982, at *6-7.  First, he states that it is improper to "transpose *Lucia*'s analysis of what constitutes an 'inferior officer,' which is based heavily on the adversarial nature of the SEC's process to SSA ALJs, but then, on the other hand, roundly dismiss *Lucia*'s issue-exhaustion requirement because of the 'inquisitorial' and decidedly non-adversarial nature of SSA proceedings."  2019 WL 2268982, at *6.  Second, Judge Kelly asserted that "issue-exhaustion requirements are not foreclosed in SSA proceedings when appealing a final decision in federal court."  2019 WL 2268982, at *6.  Finally, he concluded that Lucia v. SEC constitutes "persuasive authority" that a constitutional Appointments Clause challenge is "within the purview of the agency's appeals council."  2019 WL 2268982, at *6.  Several other district courts have cited Justice Scalia's concurrence in Freytag v. Comm'r, 501 U.S. at 895, to argue that permitting a claimant to raise a new issue on review in district court would encourage "sandbagging," whereby a party strategically pursues one litigation course, and, if they lose, argues afterwards to overturn the decision for reversible error.  See, e.g., Marilyn R. v. Saul, 2019 WL 4389052 (C.D. Ill. Sept. 13, 2019)(Darrow, C.J.); Fortin v. Comm'r of Soc. Sec., 372 F. Supp. 3d 558, 566 (E.D. Mich. 2019)(Lawson, J.).  Many other courts have concluded that the SSA's regulations require issue exhaustion.  See e.g., Abbington v. Berryhill, 2018 WL 6571208, at *5-6 (S.D. Ala. Dec. 13, 2018).

Judge Kelly's first objection -- that a court should not "cherry-pick" sections of Lucia v. SEC to support its decision to remand -- is sensible, and the Court keeps it in mind while addressing

whether the ALJ overseeing McCray's case was an officer of the United States. Marchant on behalf of A.A.H. v. Berryhill, 2019 WL 2268982, at *6. See, infra, § VII.B. The Court notes here, however, that, because Sims v. Arpfel specifically concerns timeliness of appeals in SSA proceedings, the Court views it as more controlling than Lucia v. SEC in deciding when McCray had to raise the appointments issue. Judge Kelly's second objection -- that "issue-exhaustion requirements are not foreclosed in SSA proceedings when appealing a final decision in federal court," is unconvincing. Marchant on behalf of A.A.H. v. Berryhill, 2019 WL 2268982, at *6. The Supreme Court reserved the question whether Sims v. Arpfel's reasoning applies to ALJs in addition to the Appeals Council, see Sims v. Arpfel, 530 U.S. at 107, and some Courts of Appeals have declined to alter precedent, stating that issues are waived when not raised before an ALJ, see Shaibi v. Berryhill, 883 F.3d at 1109; Anderson v. Barnhart, 344 F.3d at 814; Mills v. Apfel, 244 F.3d at 8. In the Court's opinion, however, the Supreme Court's silence and three Courts of Appeals' inertia do not suggest anything about the question's merits. Last, the Court disagrees with Judge Kelly's suggestion that Lucia v. SEC, "clearly places an Appointments Clause challenge within the purview of the agency's appeals council." Marchant on behalf of A.A.H. v. Berryhill, 2019 WL 2268982, at *7. Lucia v. SEC provides an example of a timely Appointments Clause challenge, but it does not purport to set a floor for timeliness in all circumstances. See Lucia v. SEC, 138 S. Ct. at 2055 ("This Court has held that 'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief. Lucia made just such a timely challenge: He contested the validity of Judge Elliot's appointment before the Commission . . .")(quoting Ryder v. United States, 515 U.S. at 182-83). The question of timeliness was not before the Supreme Court. See Lucia v. SEC, 138 S. Ct. at 2055 ("This case requires us to decide whether administrative law judges (ALJs) of the Securities

and Exchange Commission (SEC or Commission) qualify as such 'Officers.'").  In addition, when the Supreme Court issued <u>Lucia v. SEC</u>, the SSA did not believe that it could entertain constitutional challenges to ALJ appointments.  In Emergency Message 18003, issued June 25, 2018, the SSA directed its ALJs to "**only** respond that 'the hearing decision[/dismissal] will acknowledge that the argument was raised.' Because SSA lacks the authority to finally decide constitutional issues such as these, ALJs will **not** discuss or make any findings related to the Appointments Clause issue on the record." (bold in original).  The SSA, thus, neither expected claimants to raise these issues nor believed that its ALJs could answer them.  <u>See</u> <u>Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.</u>, 561 U.S. 477, 491 (2010)("Petitioners' constitutional claims are also outside the Commission's competence and expertise."); <u>Jones Bros., Inc. v. Sec'y of Labor</u>, 898 F.3d 669, 674 (6th Cir. 2018)(concluding that the plaintiff had not waived his <u>Lucia v. SEC</u> challenge, because only the judiciary can invalidate unconstitutional statutes, and "[w]e thus could not fault a petitioner for failing to raise a facial constitutional challenge in front of an administrative body that could not entertain it").  Such a challenge would have been futile, anyway, as an SSA ALJ could neither appoint himself nor assign the case to a properly appointed hearing officer.  <u>See</u> <u>Cirko on behalf of Cirko v. Comm'r of Soc. Sec</u>, 2020 WL 370832, at *5.  <u>See also</u> <u>Mathews v. Eldridge</u>, 424 U.S. 319, 330 (1976)("It is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single aid recipient raising a constitutional challenge in an adjudicatory context," and "[t]he Secretary would not be required even to consider such a challenge").

The Court is unconcerned that permitting McCray to raise his Appointments Clause challenge for the first time before the Court will sanction or encourage "sandbagging," or the practice of encouraging the trial court pursue one course while arguing later that this course was

reversible error.  <u>Freytag v. Comm's of Internal Revenue</u>, 501 U.S. at 895 (Scalia, J., concurring).

<u>See</u> <u>Abbington v. Berryhill</u>, 2018 WL 6571208, at *7; <u>Bonilla-Bukhari v. Berryhill</u>, 357 F. Supp.

3d at 352; <u>Sprouse v. Berryhill</u>, 363 F. Supp. 3d at 550.  The executive branch completely

overhauled ALJ appointments in <u>Lucia v. SEC</u>'s wake, <u>see</u> Exec. Order No. 13,843, 83 Fed. Reg.

32,755 (July 10, 2018), and on July 16, 2018, the Acting Commissioner of the SSA appointed all

of the agency's ALJs to comply with the Constitution, <u>see</u> SSR 19-1, 84 Fed. Reg. 9582, 9583

(March 15, 2019).  Thus, the Appointments Clause challenge is available only to a relatively

narrow class of litigants -- those litigants with pending appeals whose claims ALJs heard before

July 16, 2018.  More importantly, however, McCray did not have representation in the proceedings

before the SSA.  <u>See</u> Objections at 11.  Reviewing courts have suggested that an unrepresented

status makes a difference.  Justice Breyer stated in <u>Sims v. Apfel</u> that, contrary to the majority

opinion, the Social Security proceedings' informality mattered in only one way; while

"[a]dministrative lawyers are normally aware of the basic 'exhaustion of remedies' rules" the

proceedings' informality "might make the claimant believe he need not raise every issue before

the Appeals Council."  530 U.S. at 118.  Justice Breyer otherwise doubted it was arbitrary and

capricious to apply the waiver rule "when a claimant was represented before the Appeals Council,

as was petition, by an *attorney*."     <u>Sims v. Apfel</u>, 530 U.S. at 118-19 (Breyer, J.,

dissenting)(emphasis in original).  The Ninth Circuit, which holds that claimants who do not raise

issues before an ALJ have waived the issue in district court, explicitly limits this rule to represented

parties.  <u>See</u> <u>Shaibi v. Berryhill</u>, 883 F.3d at 1109 ("At least when claimants are represented by

counsel, they must raise all issues and evidence at their administrative hearings in order to preserve

them on appeal."); <u>Meanel v. Apfel</u>, 172 F.3d at 1115.  While the outcome may be different for a

represented party, these opinions suggest that the Court should not penalize McCray, or any other

pro se plaintiff, by assuming he or she pursued a "strategic" litigation plan to withhold an Appointments Clause challenge during agency proceedings.  Freytag v. Comm'r, 501 U.S. at 895 (Scalia, J., concurring).

Finally, while several district courts have concluded that the SSA's regulations governing ALJ hearings require issue exhaustion, the regulations imply no such thing.  See e.g., Diane S. P. v. Berryhill, 379 F. Supp. 3d at 522; Marchant on behalf of A.A.H. v. Berryhill, 2019 WL 2268982, at *7.  The SSA's regulations for ALJ hearings are undeniably more exacting and thorough than the Appeal Council regulations that the Supreme Court analyzed in Sims v. Apfel.  For example, to get a hearing before an ALJ after a disability claim denial, claimants must file a written request stating "[t]he reasons you disagree with the previous determination or decision," 20 C.F.R. § 404.933(a)(2), and any "additional evidence to be submitted," 20 C.F.R. § 404.933(a)(3).  At least seventy-five days before the hearing, the agency provides a notice of the "specific issues to be decided."  20 C.F.R. § 404.938(b)(1).  Claimants must, if they object to any of these issues, "notify the administrative law judge in writing at the earliest possible opportunity" and "state the reason(s)" for objection.  20 C.F.R. § 404.939.  ALJs have discretion to consider new issues.  See 20 C.F.R. § 404.946(b).  Claimants may object to the ALJ assigned to hear his or her case, although the only grounds the regulations appear to provide for disqualification are prejudice and impartiality.  See 20 C.F.R. §§ 404.940, 416.1440.  The SSA's regulations do not, however, explicitly state that unraised issues are forfeited.  Such explicit requirements are not uncommon in statutes or regulations.  See Jeffrey Lubbers, Fail to Comment at Your Own Risk: Does Issue Exhaustion Have a Place in Judicial Review of Rules? 70 Admin. L. Rev. 109, 114-18 (2018)(citing twenty-two statutes and four regulations mandating issue exhaustion in agency proceedings).  Cf. Sims v. Apfel, 530 U.S. at 113 (O'Connor, J., concurring)(writing separately to

argue that "the agency's failure to notify claimants of an issue exhaustion requirement in this context is a sufficient basis for our decision"); Mathews v. Eldridge, 424 U.S. at 329 n.10 ("If Eldridge had exhausted the full set of available administrative review procedures, failure to have raised his constitutional claim would not bar him from asserting it later in a district court."). The SSA's regulations do help the ALJ and the claimant prepare issues for the hearing, but in light of the Supreme Court's guidance that, when "an administrative proceeding is not adversarial, we think the reasons for a court to require issue exhaustion are much weaker," Sims v. Apfel, 530 U.S. at 110, the Court is hesitant to impose an issue exhaustion requirement that is only inferentially visible in the regulations. See Culclasure v. Comm'r of Soc. Sec. Admin., 375 F. Supp. 3d at 570; Bizarre v. Berryhill, 364 F. Supp. 3d at 422; Bradshaw v. Berryhill, 372 F. Supp. 3d at 356-58; Willie Earl C. v. Saul, 2019 WL 2613819, at *4 n.6 (N.D. Okla. June 26, 2019)(McCarthy, J.). See also Sims v. Apfel, 530 U.S. at 118 (Breyer, J., dissenting)(noting that the SSA "does not apply its waiver rule where the claimant is not represented" (citing Brief for Respondent at 41-42)).

**B.      THE SOCIAL SECURITY ADMINISTRATION ALJ PRESIDING OVER MCCRAY'S CASE IS AN OFFICER OF THE UNITED STATES.**

Having concluded that it may consider McCray's previously unraised Appointments Clause challenge, the Court now considers whether the ALJ who oversaw his case was an "Officer of the United States" and, therefore, subject to the Appointments Clause. U.S. Const., art. II, § 2, cl. 2. In its response, the SSA states: "For purposes of this brief, Defendant does not argue that SSA ALJs are employees rather than inferior officers." Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision at 11, filed October 28, 2019 (Doc. 26)("SSA Response"). Given the important constitutional issues involved, the Court decides

the issue anyway. The Court concludes, based on Supreme Court precedent, that SSA ALJs are "Officers" and subject to the Appointments Clause.

In July, 2018, the Office of the Solicitor General issued a memo to federal agencies providing guidance on administrative law judges in light of <u>Lucia v. SEC</u>. <u>See</u> Memorandum from the Solicitor General, U.S. Dep't of Justice, to Agency Gen. Counsels, <u>Guidance on Administrative Law Judges After </u>Lucia v. SEC<u> (S. Ct.)</u>(July 2018)("<u>Lucia</u> Memo"). In the <u>Lucia</u> Memo, the Solicitor General's office stated that "all ALJs and similarly situated administrative judges should be appointed as inferior officers under the Appointments Clause." <u>Lucia</u> Memo at 2. Regarding ALJs who, like SSA ALJs, do not preside over adversarial hearings, the Solicitor General says:

> The Court's decision in <u>Lucia</u> does not directly address the constitutional status of administrative law judges appointed under 5 U.S.C. § 3105 who do not preside over adversarial administrative hearings or possess powers equivalent to those of the SEC ALJs in <u>Lucia.</u> For example, *Lucia* does not squarely resolve the status of ALJs who preside over ex parte hearings for applicants seeking federal benefits. Nonetheless, much of the reasoning of *Lucia* applies with equal force to such ALJs: while they may not preside over adversarial trials, they do take testimony, preside over hearings, receive and weigh evidence, and employ various mechanisms for obtaining compliance with their orders. Accordingly, taking into account both the Supreme Court's reasoning in *Lucia* and the importance of ensuring the President's oversight of the execution of the laws, the Department of Justice no longer plans to argue that such ALJs are employees rather than inferior officers.

<u>Lucia</u> Memo at 3. This conclusion -- that ALJs which preside over non-adversarial proceedings are subject to the Appointments Clause -- is not universally accepted; two notes in the Harvard Law Review suggest the Solicitor General did not thoroughly examine the issue. <u>See Administrative Law-Appointments Clause-Solicitor General Issues Guidance on Administrative Judges.-Guidance on Administrative Law Judges After Lucia v. Sec (S. Ct.), July 2018</u>, 132 Harv. L. Rev. 1120 (2019); <u>Article II-Appointments Clause-Officers of the United States-Lucia v. Sec</u>, 132 Harv. L. Rev. 287 (2018). The first note suggests that, while "the Administration's conclusion that SSA ALJs are 'Officers of the United States' under *Lucia* is doctrinally defensible," "SSA

ALJs are meaningfully distinct from *Freytag* STJs and *Lucia* SEC ALJs in at least one way: the benefits determination proceedings they oversee are nonadversarial."  Article II-Appointments Clause-Officers of the United States-Lucia v. Sec, 132 Harv. L. Rev. at 293-94.  The second note argues that "*Lucia* neither requires nor invites the changes outlined in the Solicitor General's memo," and that, "insofar as *Lucia*'s logic *can* be extended, it should extend only to adjudicators who oversee adversarial proceedings."  Administrative Law-Appointments Clause-Solicitor General Issues Guidance on Administrative Judges.-Guidance on Administrative Law Judges After Lucia v. Sec (S. Ct.), July 2018, 132 Harv. L. Rev. at 1123-24 (emphasis in original).

> ### a.   Relevant Law Regarding Article II, § 2, clause 2 of the United States Constitution.

Two cases provide the Supreme Court's "basic framework for distinguishing between officers and employees."  Lucia v. SEC, 138 S. Ct. at 2051.  See Office of Legal Counsel, U.S. Dep't of Justice, Officers of the United States Within the Meaning of the Appointments Clause (April 16, 2007).  United States v. Germaine, 99 U.S. 508 (1879), held that civil surgeons "were mere employees because their duties were 'occasional or temporary' rather than 'continuing and permanent.'"  Lucia v. SEC, 138 S. Ct. at 2051 (quoting United States v. Germaine, 99 U.S. at 511-12).  Buckley v. Valeo added that "any appointee exercising significant authority pursuant to the laws of the United States" is subject to the Appointments Clause.  Buckley v. Valeo, 424 U.S. at 126.  The Supreme Court, in Freytag v. Commissioner, applied Buckley v. Valeo's standard and held that "special trial judges" ("STJs") within the United States Tax Court were inferior officers subject to the Appointments Clause.  Freytag v. Comm'r, 501 U.S. at 881.  The Supreme Court rejected the argument that STJs are employees rather than officers where they "lack authority to make a final decision," noting that these judges "perform more than ministerial tasks.  They take testimony, conduct trials, rule on the admissibility of evidence, and have the power to enforce

compliance with discovery orders.  In the course of carrying out these important functions, the special trial judges exercise significant discretion." Freytag v. Comm'r, 501 U.S. at 881-82.

In Lucia v. SEC, the Supreme Court relied entirely on Freytag v. Commissioner to conclude that SEC ALJs were also officers.  Lucia v. SEC, 138 S. Ct. at 2052.   Like the STJs in Freytag v. Commissioner, SEC ALJs "exercise the same 'significant discretion' when carrying out the same 'important functions."  Lucia v. SEC, 138 S. Ct. at 2053 (quoting Freytag v. Comm'r, 501 U.S. at 878).  They each take testimony, conduct trials, rule on the admissibility of evidence, and "have the power to enforce compliance with discovery orders."  Lucia v. SEC, 138 S. Ct. at 2053. Finally, the SEC ALJ's decisions were even more independent than those of the STJs in Freytag v. Commissioner; unlike the STJs, where the SEC declines to review their own ALJs orders, the SEC ALJs' opinions "'become[] final' and are 'deemed the action of the Commission.'"  Lucia v. SEC, 138 S. Ct. at 2054f (quoting 15 U.S.C. § 78d-1(c); 17 C.F.R. § 201.360(d)(2)).

The  Supreme  Court  also  rejected  two  counterarguments  that  the  amicus[6] presented  to attempt to prevent Freytag v. Commissioner's reasoning from applying to the SEC's ALJs.  See Lucia v. SEC, 138 S. Ct. at 2054.  First, it made no difference that SEC ALJs -- unlike the STJs -- have no power to enforce compliance with discovery orders with fines or imprisonment; the SEC's ALJs still had some power "'to enforce compliance with discovery orders,'" by excluding participants from hearings, Lucia v. SEC, 138 S. Ct. at 2054 (quoting Freytag v. Comm'r, 501 U.S. at 882), even if their means were less muscular.  Second, the fact that regulations stated Tax Court special trial judges "'shall be presumed,'" correct on review while SEC ALJs do not receive similar

---

[6]The United States changed its position in the course of litigating Lucia v. SEC.  See Lucia v. SEC, 138 S. Ct. at  2050-51.  It defended the SEC's position that ALJs are employees before the D.C. Circuit, but argued that they were officers when Lucia appealed to the Supreme Court. Given the United States' new position, Supreme Court "appointed an amicus curiae to defend the judgment below." Lucia v. SEC, 138 S. Ct. at 2051.

deference is not significant, because <u>Freytag v. Commissioner</u> "never suggested that the deference given to STJs' factual findings mattered to its Appointments Clause analysis." <u>Lucia v. SEC</u>, 138 S. Ct. at 2054 (quoting Tax Court Rule 183(d)).

The Supreme Court recognized in <u>Lucia v. SEC</u> what is obvious to anyone who examines Appointments Clause doctrine: there is no clear definition of "Officer of the United States." <u>Lucia v. SEC</u>, 138 S. Ct. at 2051 (stating that <u>Buckley v. Valeo</u>'s "significant authority" test "is no doubt framed in general terms, tempting advocates to add whatever glosses best suit their arguments."); <u>id.</u> at 2064-65 (Sotomayor, J., dissenting)("The Court today and scholars acknowledge that this Court's Appointments Clause jurisprudence offers little guidance on who qualifies as an 'Officer of the United States.'"); <u>Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.</u>, 561 U.S. at 538 (Breyer, J., dissenting)("Courts and scholars have struggled for more than a century to define the constitutional term 'inferior officers,' without much success."); John T. Plecnik, <u>Officers Under the Appointments Clause</u>, 11 Pitt. Tax Rev. 201, 204 (2014)("To date, virtually every court and commentator begins their analysis by conceding that the case law, and hence, the doctrine of the Appointments Clause is unclear."). Despite a profound and lingering confusion that has plagued this corner of constitutional law, the Supreme Court nevertheless saw no "need to refine or enhance the test" when it most recently addressed the issue. 138 S. Ct. at 2052. A few Justices wrote separately in <u>Lucia v. SEC</u>, to attempt to provide firmer guidance. Associate Justice Clarence Thomas, in a concurring opinion that Associate Justice Neil Gorsuch joined, stated that he would look to "the original public meaning," of the phrase to define "Officers of the United States." 138 S. Ct. at 2056. According to Justice Thomas, this term was originally highly expansive and "encompassed all federal officials 'with responsibility for an ongoing statutory duty.'" 138 S. Ct. at 2056 (quoting <u>NRLB v. SW General, Inc.</u>, 137 S. Ct. 929, 946 (2017)). His argument mainly

draws from Professor Jennifer Mascott's law review article, <u>Who Are "Officers of the United States"?</u>. <u>See</u> 138 S. Ct. at 2056-57 (citing Jennifer L. Mascott, <u>Who Are "Officers of the United States"?</u> 70 Stan. L. Rev. 443 (2018)). Applying this broad definition, Justice Thomas stated that the SEC's ALJs were subject to the Appointments clause, because they "exercise many of the agency's statutory duties" and are "continuously responsible for performing them." 138 S. Ct. at 2057.

Associate Justice Sonia Sotomayor provided an alternative, narrower definition of "officer" in a dissenting opinion which Associate Justice Ruth Bader Ginsburg joined. 138 S. Ct. at 2065. She stated that, in her opinion, "one requisite component of 'significant authority' is the ability to make final, binding decisions on behalf of the Government. Accordingly, a person who merely advises and provides recommendations to an officer would not herself qualify as an officer." 138 S. Ct. at 2065 (quoting <u>Buckley v. Valeo</u>, 424 U.S. at 126). According to Justice Sotomayor, the SEC's ALJs are not officers, because the SEC can, on petition or its own initiative, review de novo any ALJ decision, make findings or conclusion on the basis of the record, and accept evidence or refer a case for more fact-finding. 138 S. Ct. at 2065. Justice Sotomayor also noted:

> Even where the Commission does not review an ALJ's initial decision, as in cases in which no party petitions for review and the Commission does not act *sua sponte,* the initial decision still only becomes final when the Commission enters a finality order. 17 C.F.R. § 201.360(d)(2). And by operation of law, every action taken by an ALJ "shall, for all purposes, . . . be deemed the action of the *Commission*." 15 U.S.C. § 78d-1(c)(emphasis added). In other words, Commission ALJs do not exercise significant authority because they do not, and cannot, enter final, binding decisions against the Government or third parties.

138 Ct. at 2066. The Tenth Circuit has suggested, in an opinion that predates <u>Lucia v. SEC</u>, that it disagrees with Justice Sotomayor's proposed test for determining officer status. <u>See</u> <u>Bandimere v. SEC</u>, 844 F.3d 1168 (10th Cir. 2016). In <u>Bandimere v. SEC</u>, the Tenth Circuit split with the

United States Court of Appeals for the District of Columbia and held that the SEC's ALJs are subject to the Appointments Clause. See 844 F.3d at 1179-1182; Raymond J. Lucia Cos., Inc., v. SEC, 832 F.3d 277, 283 (D.C. Cir. 2016)(Rogers, J., joined by Pillard and Wilkins, JJ.). As it reached this conclusion, the Tenth Circuit rejected the SEC's arguments that ALJs are not officers, because they cannot render final decisions and the SEC retains authority to review ALJs' decisions de novo. See 844 F.3d at 1182. It noted that, contrary to the D.C. Circuit's opinion in Landry v. FDIC, "properly read, *Freytag* did not place 'exceptional stress' on final decision-making power." Bandimere v. SEC, 844 F.3d at 1183 (quoting Landry v. FDIC, 204 F.3d 1125, 1134 (D.C. Cir. 2000)). The Tenth Circuit concluded that "[f]inal decision-making power is relevant in determining whether a public servant exercises significant authority. But that does not mean *every* inferior officer *must* possess final decision-making power. *Freytag*'s holding undermines that contention." 844 F.3d at 1183-84 (emphasis in original).

**b.     Social Security ALJs Are Officers of the United States.**

Whether the SSA ALJs are officers requires the Court to consider their "creation and duties." Bandimere v. SEC, 844 F.3d at 1176. The Administrative Procedure Act, Pub. L. 79-404, first created the administrative law judge position. See 5 U.S.C. §§ 556(b)(3), 3105; Bandimere v. SEC, 844 F.3d at 1176; Mullen v. Bowen, 800 F.3d 535, 540 n.5 (6th Cir. 1986)("[T]he ALJ's position is not a creature of administrative law; rather, it is a direct creation of Congress under the [APA]."). Before Lucia v. SEC, ALJs were within the federal government's civil service, and thus were subject to regulations governing their hiring and firing. See Bandimere v. SEC, 844 F.3d at 1176-77 (detailing the various ALJ regulations); Kent Barnett, Resolving the ALJ Quandary, 66 Vand. L. Rev. 797, 804-808 (2013)(describing ALJs' selection, tenure protections, and independence). The SSA has promulgated extensive regulations governing hearing procedures before its administrative law judges, see 20 C.F.R. § 404.929 to 404.961, and

its ALJs "essentially have life tenure because they do not serve for a period of years in office," Resolving the ALJ Quandary, 66 Vand. L. Rev. at 807. Accordingly, the Court concludes that the SSA ALJs occupy a continuing position "established by Law." U.S. Const., art. II, § 2, cl. 2. See United States v. Germaine, 99 U.S. at 511-12.

The Court also concludes that the ALJs exercise "significant authority pursuant to the laws of the United States." Buckley v. Valeo, 424 U.S. at 126. SSA ALJs exercise significant control over claims proceedings. Despite a claims proceeding's non-adversarial nature, it is difficult to otherwise distinguish overseeing ALJs from the SEC's ALJs and the Tax Court's STJs. Lucia v. SEC notes that the four reasons that the Supreme Court provides in Freytag v. Commissioner for concluding that the STJs were officers also applied to SEC ALJs, and many of the same points also apply to the SSA's ALJs.

The SSA's ALJs, for example, "may receive any evidence at the hearing that he or she believes is material to the issues," 20 C.F.R. § 404.950, "decide when the evidence will be presented," 20 C.F.R. § 404.944, "ask the witness any questions material to the issues," 20 C.F.R. 404.950(e), and "issue subpoenas," 20 C.F.R. § 404.950(d)(1). Compare Lucia v. SEC, 138 S. Ct. at 2053 ("First, the Commission's ALJs (like the Tax Court's STJs) 'take testimony.' . . . More precisely, they '[r]eceiv[e] evidence' and '[e]xamine witnesses' at hearings, and may also take pre-hearing depositions."). While the claim proceeding is not adversarial, and ALJs therefore do not have the power to "conduct trials," Lucia v. SEC, 138 S. Ct. at 2053, they nevertheless have the power to administer oaths, see 20 C.F.R. § 498.204(b)(4), rule on motions, see 20 C.F.R. § 498.204(b)(6), and otherwise "regulate the course of the hearing," 20 C.F.R § 498.204(b)(8). Compare Lucia v. SEC, 138 S. Ct. at 2053 ("Second, the ALJs (like STJs) 'conduct trials.' 501 U.S., at 882 . . . . As detailed earlier, they administer oaths, rule on motions, and generally

'regulat[e] the course of' a hearing, as well as the conduct of parties and counsel." (quoting 17 C.F.R. § 201.111)).  The SSA ALJs may also "receive any evidence at the hearing that he or she believes is material to the issues," 20 C.F.R. § 404.950(c), "exclude" evidence, 20 C.F.R. § 498.204(b)(10), and issue subpoenas, see 20 C.F.R. §§ 404.950(d), 498.204(b)(5).  Compare Lucia v. SEC, 138 S. Ct. at 2053 ("Third, the ALJs (like STJs) 'rule on the admissibility of evidence.' 501 U.S., at 882 . . . .  They thus critically shape the administrative record (as they also do when issuing document subpoenas).").  SSA ALJs also have some power to enforce compliance with their orders.  See 20 C.F.R. § 498.214.  There is no express limit on the SSA ALJs' sanctioning authority, but they may order parties or attorneys to pay attorney's fees, enter default judgment, and prohibit parties from introducing certain evidence.  See 20 C.F.R. §§ 498.204(c), 498.214.  The SSA has interpreted these regulations as providing its ALJs the power to exclude parties and representatives from hearings.  See Soc. Sec. Admin., Hearings, Appeals, and Litigation Law Manual I-2-6-60(D) (2016); Article II-Appointments Clause-Officers of the United States-Lucia v. Sec, 132 Harv. L. Rev. at 294.  Compare Lucia v. SEC, 138 S. Ct. at 2053 ("[T]he ALJs (like STJs) 'have the power to enforce compliance with discovery orders.' 501 U.S., at 882 . . . .  In particular, they may punish all '[c]ontemptuous conduct,' including violations of those orders, by means as severe as excluding the offender from the hearing.").

Lucia v. SEC's emphasis on the adversarial nature of the proceedings before SEC ALJs and Tax Court STJs does not factor into the Court's conclusion.  Although the Supreme Court noted in Lucia v. SEC, as it analogized to Freytag v. Commissioner, that both sets of judges "have all the authority needed to ensure fair and orderly adversarial hearings," and that "point for point from Freytag's list, SEC ALJs have equivalent duties and powers as STJs in conducting adversarial inquiries," the Court does not believe that the adversarial distinction makes a

difference.  Lucia v. SEC studiously avoids stating whether adversarial proceedings are necessary to conclude an ALJ is an officer, as did all parties involved.  See Article II-Appointments Clause-Officers of the United States-Lucia v. Sec, 132 Harv. L. Rev.at 295 (2018)("[N]either *Lucia* nor any of the briefs squarely explain why an ALJ that oversees an adversarial hearing should be considered an 'Officer of the United States,' while an ALJ that oversees a nonadversarial hearing should be considered a 'mere employee'").  With so little guidance from the modern Supreme Court, and in light of the fact that "efforts to define ['inferior Officers'] inevitably conclude that the term's sweep is unusually broad,'" Free Enter. Fund v. Pub. Co. Accounting Oversight Bd, 561 U.S. at 539 (Breyer, J., dissenting), the Court will not agonize over minute analogies between ALJs in recent precedent.  The SSA ALJs are similar enough to those judges in Lucia v. SEC and Freytag v. Commissioner to conclude that they, too, exercise the "significant authority" that subject them to compliance with the Appointments Clause.  Buckley v. Valeo, 424 U.S. at 126.

The ALJ overseeing McCray's claim proceeding was an "Officer of the United States," U.S. Const., art. II, § 2, cl. 2, but was not appointed to the position in accordance with the Appointments Clause.  The "'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official." Lucia v. SEC., 138 S. Ct. at 2055 (quoting Ryder v. United States, 515 U.S. at 183, 188).  The Court, therefore, remands McCray's case to the SSA for rehearing.

**IT IS ORDERED** that: (i) the Magistrate Judge's Proposed Findings and Recommended Disposition, filed December 2, 2019 (Doc. 29)("PFRD"), is adopted in part and overruled in part; (ii) the Plaintiff's Objections, filed December 16, 2019 (Doc. 30), are overruled in part and granted in part; (iii) the Court adopts all of the Magistrate Judge's PFRD except his discussion of the Appointments Clause; (iv) the Court overrules all of the Plaintiff's Objections except the Plaintiff's

Objection that the ALJ who heard his case was unconstitutionally appointed; (v) Plaintiff's Motion to Reverse and Remand, filed July 29, 2019 (Doc. 22), is granted in part and denied in part; (vi) the Court remands the case to the Social Security Administration for proceedings before a properly appointed ALJ.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Francesca J. MacDowell
MacDowell Law, P.C.
Placitas, New Mexico

     *Attorney for the Plaintiff*

Danielle A. Pedderson
Laura Holland
Social Security Administration
Denver, Colorado

--and--

John C. Anderson
  United States Attorney
Manuel Lucero
  Assistant United States Attorney
United States Attorney's Office
Albuquerque, New Mexico

     *Attorneys for the Defendant*